UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY FISHER,

      Plaintiff,

v.                      Case No. 8:11-cv-1889-T-33TBM

SP ONE, LTD., TOM ROBINSON,
ROYAL AMERICAN MANAGEMENT,
INC., and TERE DYKES,

      Defendants.
_____/

## ORDER

This cause comes before the Court pursuant to Defendants' Motion for Summary Judgment (Doc. # 41), filed on December 28, 2012. Plaintiff, who is represented by counsel, failed to file a timely response in opposition to the Motion. On January 15, 2013, this Court entered an Order directing Plaintiff to file a response in opposition to the Motion on or before January 18, 2013, and warning Plaintiff that failure to respond would result in the Court considering the motion to be unopposed. (Doc. # 42). Despite this extended opportunity to respond to the Motion, Plaintiff has failed to do so. Accordingly, the Court considers the Motion for Summary Judgment as an unopposed motion.

However, the Court is not permitted to grant the Motion for Summary Judgment solely because the Motion is unopposed. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."). In the instant case, after reviewing the entire record and viewing the evidence in the light most favorable to Plaintiff as the non-movant, the Court grants in part and denies in part Defendants' Motion for Summary Judgment.

I.   **Background**

In November of 2006, Plaintiff Jeffrey Fisher became a tenant in the Viridian Apartments (formerly known as the Columbian Apartments), a high-rise apartment building in St. Petersburg, Florida, consisting of 188 one-bedroom apartments for low-income, elderly residents. (Doc. # 1 at ¶ 20; Doc. # 41 at 2). Pursuant to a contract with the Department of Housing and Urban Development (HUD), the Viridian reserves 133 units for residents with certain qualifying income levels. (Koehler Dep. Doc. # 41-26 at 4). Defendant SP One, Ltd. purchased the Viridian on June

2

30, 2009, and hired Defendant Royal American Management, Inc. to manage the property. (Kohler Dep. Doc. # 41-26 at 3; Doc. # 41 at 2). Defendants Tom Robinson, the Viridian's property manager, and Tere Dykes, Royal American's regional manager, both were Royal American employees during Fisher's tenancy. (Doc. # 41 at 3).

Within days of purchasing the Viridian in 2009, SP One began a significant renovation program. In the early days of implementing this program, Royal American "had a series of meetings with the residents informing them about the rehab, the new ownership, the new management[,] and new policies." (Robinson Dep. Doc. # 41-28 at 3). These new policies included a rule that appliances such as freezers and dishwashers "that [weren't] provided were going to be forbidden." Id.

This new rule impacted Fisher, as he possessed various personal appliances not provided by the Viridian, including a personal air conditioner, as well as a laundry washer and dryer. (Fisher Dep. Doc. # 41-23 at 34, 36). In addition to these prohibited appliances, Fisher's apartment apparently contained a copious collection of unspecified "clutter." (Notices of Noncompliance Doc. ## 41-4, 41-5, 41-6, 41-7). Throughout 2010 and 2011, the extent of the

clutter in Fisher's apartment was so severe that the Viridian's manager filed and served upon Fisher multiple Notices of Noncompliance, classifying Fisher's apartment as a "safety concern" and a "fire hazard." Id. Notably, the concern with Fisher's clutter appears to transcend the change in management; on June 13, 2007, Fisher received a similar notice from the Columbian Apartments explaining that, upon a scheduled inspection of Fisher's apartment, "the entire apartment [was] cluttered with excessive boxes, furniture, televisions, computers and other items, so that there [was] only a small path within the unit to walk from one room to another." (Columbian Apt. Notice Doc. # 41-2).

On August 10, 2009, Fisher submitted a Reasonable Accommodation Verification Form, requesting to keep his personal air conditioner in his apartment. (RAV Form Doc. # 41-9). In support of this request, Fisher provided a doctor's note indicating that, due to Fisher's cardiomyopathy, Fisher would need "stable air conditioning [and] consistent temperature" to be able to enjoy his apartment community. Id. Defendants denied Fisher's request to keep his personal air conditioner in his apartment, and they maintain at least two reasons for doing so: (1) the building's electrical panels lacked sufficient

capacity to support the additional load required to run the air conditioner (Clemmons Letter Doc. # 41-13); and (2) the renovation of the building's forty-year-old central air conditioning system made Fisher's personal air conditioner unnecessary (Johnson Dep. Doc. # 41-25 at 12, 17-18).

On January 7, 2010, Fisher apparently submitted a second Reasonable Accommodation Verification Form; this time, Fisher requested to keep his washer and dryer in his apartment.  (RA Denial Doc. # 41-14).  In connection with this request, Dr. Jose F. Luciano provided a letter on Fisher's behalf, explaining that, as a consequence of Fisher's "congestive heart failure and chronic obstructive pulmonary disease," requiring Fisher to do his laundry outside of his apartment "is very strenuous."  (Luciano Letter Doc. # 41-12).

In denying Fisher's request, Royal American explained that "the dryer must be vented per St. Petersburg Florida code, [and] additional electrical output is needed to run both the washer and dryer.  Due to recent apartment upgrades, each unit will receive a full size refrigerator and stove.  Any additional amperage will be used to run these appliances.  [Due to the] fact that the complex is a

high-rise, we are unable to vent the dryer." (RA Denial Doc. # 41-14). However, Royal American also provided that,

> [a]s an alternate reasonable accommodation, we have discovered . . . agencies in the area that will provide "aid" for disable[d] residents. These aids will not only help in cleaning, but will do laundry, [including] washing, folding and putting away clothes. We have also located apartment complexes in the area that accept the "walk-in section 8 voucher" and do have washer and dryer hook-ups. The property is also willing to let the resident use a cart on site to help the resident transport his laundry to and from the laundry room located on the ground floor and, if the need arises, the maintenance staff can assist the resident in taking his clothes down.

Id.

Defendants reiterated their ventilation concerns to Fisher in the following months. A Notice of Noncompliance addressed to Fisher and dated March 31, 2010, explains that "the use of a washer and non-vented dryer and their increased heat and moisture in your unit creates an additional and potentially exponential safety hazard. When the hazard created by the use of a washer and non-vented dryer is combined with the excessive clutter in your apartment, the safety concerns including the concerns of a fire hazard increase[ ]." (Notice of Noncompliance Doc. # 41-7 at 1).

As a corollary of the Viridian's renovation, tenants were required to relocate to temporary apartments while their permanent apartments were renovated. Accordingly, in May of 2010, with the assistance of an independent moving company hired by Defendants, Fisher was relocated from his permanent apartment on the third floor to a temporary apartment on the fourth floor of the Viridian. (Fisher Dep. Doc. # 41-23 at 48-49; Doc. # 41 at 7). Also in May of 2010, Fisher submitted a request to keep his appliances in his unit. Subsequently, Robinson (on behalf of Royal American) and Fisher each signed an agreement providing that Fisher's request was approved to the extent that Fisher would "be allowed to keep [his] appliances in [his] unit temporarily, understanding that they must be placed in a manner not to inhibit the air flow from vents, [cannot] block traffic paths, and cannot be plugged into any electrical outlet at any time." (Appliances Agreement Doc. # 41-16).

Sometime between the second and the fourth day of July, 2010, Fisher moved back into his now-fully-renovated apartment on the third floor. (Fisher Dep. Doc. # 41-23 at 47; Doc. # 41 at 7-8). However, Defendants did not return Fisher's air conditioner, washer, or dryer to him until

July 26 or 27, 2010.  (Dykes Dep. Doc. # 41-31 at 3; Robinson Dep. Doc. # 41-28 at 6).

On February 4, 2011, Fisher submitted a Reasonable Accommodation Verification Form, requesting "bathroom handrails at a proper hight (sic) and location." (RAV Form Doc. # 41-17).  In a response letter, Robinson explained that "in order to make a decision[,] we need to know the height you would like the bars placed," and asked Fisher to "submit the measurements for this information on the reasonable accommodation form and resubmit it to the office."  (Robinson Letter Doc. # 41-18).  Defendants allege that Fisher never provided this requested follow-up information; Fisher disagrees.  (Doc. # 1 at ¶ 42; Doc. # 41 n.5).

On August 19, 2011, Fisher filed the instant action, alleging discrimination in violation of the Fair Housing Act (FHA), 42 U.S.C. §§ 3604(c), 3604(f)(1)(A), and 3604(f)(3)(B), the Florida Fair Housing Act (FFHA), Fla. Stat. § 760.23, and the Rehabilitation Act, 29 U.S.C. § 794 (Count I); retaliation in violation of the FHA and FFHA (Count II); and negligent bailment (Count III). (Doc. # 1). Fisher's Complaint also includes a request for attorney's fees pursuant to 42 U.S.C. § 3613 (Count IV).  Id.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden,

the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

III. **Discussion**

A. **Discrimination**

"Under the FHA, it is unlawful to discriminate against a person by refusing 'to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.'" U.S. v. Hialeah Hous. Auth., 418 F. App'x 872, 875 (11th Cir. 2011) (quoting 42 U.S.C. § 3604(f)(3)(B)). "To prevail on a failure to accommodate claim, a plaintiff must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." Hialeah Hous. Auth., 418 F. App'x at 875 (internal quotation omitted).

The Eleventh Circuit has explained that "the duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made." Schwarz v. City of Treasure Island, 544 F.3d 1201, 1219 (11th Cir. 2008). Rather, "Defendants must . . . have been given an opportunity to make a final

decision with respect to Plaintiffs' request, which necessarily includes the ability to conduct a meaningful review of the requested accommodation to determine if such an accommodation is required by law." Id. (quoting Prindable v. Ass'n of Apt. Owners, 304 F. Supp. 2d 1245, 1258 (D. Haw. 2003)). "Whether a requested accommodation is required by law is highly fact-specific, requiring case-by-case determination." Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002).

Fisher brings his failure to accommodate claim pursuant to not only the FHA, 42 U.S.C. § 3604(f)(3)(B), but also the FFHA, Fla. Stat. § 760.23, and the Rehabilitation Act, 29 U.S.C. § 794. (The Court notes that, although Fisher has listed 42 U.S.C. §§ 3604(c) and 3604(f)(1)(A) as additional grounds for his discrimination claim, Fisher has made no attempt to allege conduct on behalf of Defendants that might have violated those provisions.) The statutory provisions of the Florida Fair Housing Act are essentially identical to those of the federal Fair Housing Act, Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc., 347 F. App'x 464, 467 (11th Cir. 2009) (internal quotation and citation omitted), while the Rehabilitation Act provides that "[n]o otherwise qualified

individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Although there are certain differences between the statutes, due to their similarities, courts generally apply the same analysis to reasonable accommodation claims arising under each. Hialeah Hous. Auth., 418 F. App'x at 876 ("We have previously recognized that we look to case law under the Rehabilitation Act and the Americans with Disabilities Act for guidance in evaluating reasonable accommodation claims under the FHA."); Hawn, 347 F. App'x at 467 ("The Florida Fair Housing Act contains statutory provisions that are substantively identical to the federal Fair Housing Act.  Accordingly, [courts] apply the same analysis to . . . claims under these two statutes."). Therefore, the Court's analysis applies to Fisher's claims under each of the three statutes.

In the instant motion for summary judgment, Defendants do not dispute that Fisher's personal-appliance-related accommodation requests were denied.  Rather, Defendants

argue that Fisher "presents no competent evidence that his requested accommodations were either reasonable or necessary," and thus that Defendants are entitled to summary judgment as to Count I of the Complaint. (Doc. # 41 at 10). The Court agrees.

Defendants have offered ample evidence demonstrating that Fisher's accommodation requests were not reasonable. In the Complaint, Fisher identifies three requested accommodations: (1) a personal, portable air conditioning unit "to assist his breathing," (2) "a portable washing machine and dryer to enable him to do his laundry in his unit and avoid the necessity of leaving his unit to go to the laundry room," and (3) modified handrails in his bathtub. (Doc. # 1 at ¶¶ 21, 40).

"The determination of whether an accommodation is reasonable is highly fact-specific and determined on a case-by-case basis." Advocacy Ctr. for Persons with Disabilities, Inc. v. Woodlands Estates Ass'n, Inc., 192 F. Supp. 2d 1344, 1348 (M.D. Fla. 2002). "For example, an accommodation is reasonable if it does not impose undue financial and administrative burdens or changes, adjustments, or modifications to existing programs that would be substantial, or that would constitute fundamental

14

alterations in the nature of the program." Id. (internal
quotations and citations omitted).

The Court finds that no genuine issue of material fact
exists as to whether Fisher's requests for his own,
personal laundry washer, dryer, and air conditioning unit
were unreasonable. Defendants have produced sufficient
evidence to show that the Viridian's electrical and water
services could not support the additional amperage required
to run these appliances.

In a letter from Timothy Clemmons, Defendants'
architect, to a representative of Royal American, Clemmons
explains that "[d]uring the design phase for the building
renovation we notified the new Owner that the electrical
panels serving the apartments are already at maximum
capacity and that it would not be possible to add
additional electrical load to those panels." (Clemmons
Letter Doc. # 41-13). Additionally, with specific
reference to Fisher's laundry machine requests, Clemmons
explained that "the dryer requires a 208 volt circuit and
there are currently no such circuits within the apartments.
[T]he washer would also require a cold and hot water supply
line and a sanitary drain line [to] be added to each
apartment. The cost for this would be prohibitively

expensive to install at this time . . . ."  <u>Id.</u>
Accordingly, the Court finds that granting Fisher's
accommodation requests for a personal air conditioner and
laundry machines would have imposed undue financial and
administrative burdens upon Defendants, and therefore that
Fisher's requests were not reasonable.

With regard to Fisher's request for modified hand
rails in his bathroom, the Court finds no evidence that
this request was ever denied.  Defendants have submitted a
copy of the letter provided to Fisher by Robinson in
response to Fisher's request to have the "grab bars" in his
bathroom raised.  (Robinson Letter Doc. # 41-18).  In that
letter, Robinson explains: "In order to make a decision we
need to know the height you would like the bars placed[;]
please submit the measurements for this information on the
reasonable accommodation form and resubmit it to the
office."  <u>Id.</u>  Beyond Fisher's allegation in the Complaint
that Defendants "have failed and refused to install hand
rails in Fisher's bathtub," the record is devoid of any
indication that Defendants made any final determination
with regard to that request.  (Doc. # 1 at ¶ 42).  Since
Fisher has declined to go beyond the pleadings and produce
evidence to dispute Defendants' contention that the request

for handrails was never denied, summary judgment on this issue is appropriate. Thus, the Court grants summary judgment as to Count I of Fisher's Complaint.

### B.   Retaliation

The FHA provides that "'it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed' any right granted or protected under the FHA." Wood v. Briarwinds Condo. Ass'n Bd. of Directors, 369 F. App'x 1, 3 (11th Cir. 2010) (quoting 42 U.S.C. § 3617).

Fisher claims that, prior to the relocation of residents due to the renovation, the movers and representatives of Royal American and SP One "took videos of many units to assist The Movers in returning the items moved to their original places following the renovations." (Doc. # 1 at ¶ 53). Fisher alleges that, "[i]n retaliation for the Complaint of Discrimination filed . . . on February 25, 2010, the Movers and representatives of Royal American and SP One did not take a video of Fisher's apartment, despite his ownership of many possessions . . . that had to be relocated and later returned to Unit 303." Id. at ¶ 54.

Additionally, Fisher alleges that, after the completion of the renovations, "SP One and Royal Management, through their agents, . . . failed to instruct The Movers to return Fisher's possessions to their original locations in Unit 303." Id. at ¶ 56. Instead, Fisher explains, the movers "claimed there was no room in Unit 303" to accommodate many of Fisher's belongings, and stored many of Fisher's possessions in an electrical closet on the third floor. Id. at ¶¶ 57, 59. Fisher claims that his belongings, including his portable air conditioning unit, remained in the closet without his consent for approximately two months following his return to Unit 303. Id. at ¶¶ 60-63. Fisher alleges that Defendants' decision not to immediately return his belongings after the renovation, as well as Defendants' decision not to make a pre-move video of his apartment, constituted acts of retaliation. Id.

"In order to state a cause of action for retaliation in violation of the Fair Housing Act, a plaintiff must allege (1) that he or she engaged in protected activity, (2) that he or she suffered adverse actions, and (3) that the adverse action was causally related to the protected activity." Hous. Opportunities Project for Excellence,

Inc. v. Key Colony No. 4 Condo. Ass'n, Inc., 510 F. Supp. 2d 1003, 1013 (S.D. Fla. 2007) (quoting Shotz v. City of Plantation, Fla., 344 F.3d 1161 (11th Cir. 2003) (analyzing a retaliation claim in the context of the Americans with Disabilities Act)).

Defendants concede that Fisher satisfied the first element by filing a Fair Housing Complaint with the Pinellas County Office of Human Rights.  (Doc. # 41 at 19). However, Defendants argue that Fisher did not suffer an adverse action, and that Fisher has demonstrated no causal connection between any purported adverse action and his protected activity.  Id.

Because the Court finds that Fisher has failed to establish a causal connection between any adverse action and his protected activity (specifically, Fisher's filing of a Fair Housing Complaint on February 25, 2010), the Court finds that Fisher has failed to state a claim for retaliation, and thus that Defendants' Motion for Summary Judgment is due to be granted as to Count II.

The Court acknowledges that "[t]o prove a causal connection, [the Eleventh Circuit] require[s] a plaintiff only to demonstrate that the protected activity and the adverse action were not *wholly unrelated*."  Shotz, 344 F.3d

at 1180 n.30 (internal quotation omitted) (emphasis in original). "[A] plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse action." Id.

Fisher has provided no such evidence. Indeed, Fisher's Complaint fails to state the date on which Defendants allegedly took video of other residents' apartments and declined to take a video of Fisher's; Fisher alleges only that the videos were taken "prior to the relocation." (Doc. # 1 at 10). Thus, Fisher has failed to allege –- much less establish through evidence on file –- causation with respect to this purported retaliatory act.

Fisher's next alleged retaliatory act (involving Defendants' failure to instruct the movers to return Fisher's belongings to Unit 303) occurred "after completion of the renovations, on or about Friday, August 6, 2010." Id. at 10. Thus, based on the dates provided by Fisher, nearly six months lapsed between Fisher's protected activity and this alleged retaliatory conduct. Fisher offers no evidence to show that Defendants became aware of his protected activity on any particular date other than

February 25, 2010, the date on which Fisher filed his Fair Housing Complaint.  Accordingly, the Court finds this span of nearly six months between Fisher's protected activity and the alleged retaliatory conduct, without more, insufficient to satisfy the element of causation through reliance on temporal proximity.  See Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (finding that, in an ADA retaliation action, a three-month period, without more, "[did] not allow a reasonable inference of a causal relation between the protected expression and the adverse action").  The Court thus grants Defendants' Motion for Summary Judgment as to Count II.

C.   **Negligent Bailment**

In addition to his discrimination and retaliation claims, Fisher's Complaint seeks to recover damages for negligent bailment.  In Florida, "[b]ailment is defined as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be."  Monroe Sys. for Bus.,

Inc. v. Intertrans Corp., 650 So. 2d 72, 75-76 (Fla. 3d DCA 1994).

"Where a bailment is for the mutual benefit of the parties, the bailee is liable for ordinary negligence; if the bailment is gratuitous, the bailee is liable only for gross negligence." Fireman's Fund Ins. Co. v. Dollar Sys., Inc., 699 So. 2d 1028, 1031 (Fla. 4th DCA 1997). Under Florida law, "to prove a cause of action for negligence, a plaintiff must prove that the defendant had a legal duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff incurred damages as a result." Gibbs v. Hernandez, 810 So. 2d 1034, 1036 (Fla. 4th DCA 2002).

Fisher claims that when Defendants "stored Fisher's possessions, including his personal portable air conditioning unit, his washing machine and more than 40 cardboard boxes containing computer equipment, antiques and other collectibles, in the electrical closet on the third floor, without Fisher's knowledge or consent, [Defendants] created a constructive bailment solely for their own benefit to avoid the necessity of replacing these items into Fisher's unit." (Doc. # 1 at ¶ 74). Fisher further alleges that, "while Fisher's possessions were in the

22

physical custody, control and possession of [Defendants] in
the electrical closet to which Fisher did not have access,
many of the items were damaged, lost, or stolen." Id. at ¶
75.

In the Motion for Summary Judgment, Defendants explain
that, "[i]nsofar as the Defendants assumed control over
belongings that were placed in its storage area,
[Defendants] will concede for purposes of this motion that
some form of bailment was created." (Doc. # 41 at 20).
However, Defendants contend that all of Fisher's belongings
were returned to him, including his washer, dryer, and air
conditioner. Id. at 21. Fisher disagrees, and apparently
drafted a five-page list entitled "Items Missing and
Damaged/Destroyed from the Moves During/After Renovations"
to provide Defendants with notice of the items he is
missing. (Missing Items List Doc. # 41-22).

The Court finds that certain material facts are in
dispute such that summary judgment is inappropriate as to
Fisher's claim for negligent bailment. First, Fisher has
provided Defendants with a list of items he believes to
have been lost or stolen while under the exclusive control
of Defendants, and Fisher has corroborated that list with
his sworn testimony. (Id.; Fisher Dep. Doc. # 41-23 at 237-

38, 247).  For the Court to find that the items enumerated in Fisher's list never existed, as Defendants suggest (Johnson Dep. Doc. # 41-25 at 10), the Court would have to find that Fisher's testimony was untruthful.  However, "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Strickland v. Norfolk S. Ry. Co., No. 11-15589, 2012 WL 3640999, at *1 (11th Cir. Aug. 27, 2012).  Accordingly, the Court finds that summary judgment is inappropriate here where such a ruling would require the Court to improperly weigh the credibility of Fisher's testimony and reject it as untruthful.  The Court thus denies Defendants' Motion for Summary Judgment as to Count III.

IV.   **28 U.S.C. § 1367**

Fisher's claims for retaliation and discrimination under the FHA and Rehabilitation Act provided the sole source of federal jurisdiction in this case, as the parties do not meet the requirements for diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Doc. # 1 at ¶¶ 9, 10, 15).  Because the Court grants Defendants' Motion for Summary Judgment with regard to Fisher's federal claims, and diversity jurisdiction does not exist, the Court concludes

that supplemental jurisdiction pursuant to 28 U.S.C. § 1367 supplies the only remaining basis for jurisdiction over this matter.

"The dismissal of [a plaintiff's] underlying federal question claim does not deprive the [c]ourt of supplemental jurisdiction over the remaining state law claims." Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). "Indeed, under 28 U.S.C. § 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the [c]ourt has dismissed all claims over which it had original jurisdiction, but [the court] is not required to dismiss the case." Id. "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." Id. at 1353.

Resolution of Fisher's remaining claim for negligent bailment depends on determinations of state law. "[S]tate courts, not federal courts, should be the final arbiters of state law." Ingram v. School Bd. of Miami-Dade County, 167 F. App'x 107, 108 (11th Cir. 2006). Furthermore, the Court finds that principles of judicial economy and comity weigh in favor of the Court declining to exercise supplemental

jurisdiction over Fisher's remaining state law claim. Accordingly, because the Court grants Defendants' Motion for Summary Judgment with regard to Fisher's federal claims, and diversity jurisdiction does not exist, the Court in its discretion declines to exercise supplemental jurisdiction over Fisher's claim for negligent bailment, and dismisses that claim without prejudice.  See Hicks v. Moore, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court.  We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.")).

## V.   Conclusion

The Court grants Defendants' Motion for Summary Judgment as to Counts I and II and denies the Motion as to Count III.  Furthermore, because the basis for federal jurisdiction over this action is contained in Counts I and

II of the Complaint, the Court declines to exercise supplemental jurisdiction over Fisher's remaining state law claim, and Count III is accordingly dismissed without prejudice.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motion for Summary Judgment (Doc. # 41) is **GRANTED** as to Counts I and II and **DENIED** as to Count III.

(2) Pursuant to 28 U.S.C § 1367, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim. Count III is hereby **DISMISSED WITHOUT PREJUDICE.** Pursuant to 28 U.S.C. § 1367(d), the limitations period for the claim asserted is tolled for a period of 30 days after the date of this Order. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 24th day of January, 2013.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record